SCHWARTZ, Chief Judge.
Collins was accused of strong arm robbery, first degree felony murder arising from the death of a motorist in a traffic accident which occurred while he was fleeing, along with two co-perpetrators, in a previously stolen vehicle from the scene of the robbery, and grand theft of the getaway car. After a shamefully acrimonious trial,[1] Collins was acquitted of robbery but found guilty of the lesser offense of second degree murder and of grand theft. We reverse the former conviction, but affirm the latter.
*822 I.
Inasmuch as
(a) the defendant’s acquittal as to the underlying felony of robbery precludes a conviction on any degree of felony murder based on that crime, Gurganus v. State, 451 So.2d 817 (Fla.1984); Mahaun v. State, 377 So.2d 1158 (Fla.1979); Noel v. State, 705 So.2d 648 (Fla. 4th DCA 1998); Pray v. State, 571 So.2d 554 (Fla. 4th DCA 1990); see generally Redondo v. State, 403 So.2d 954 (Fla.1981), quashing Redondo v. State, 380 So.2d 1107 (Fla. 3d DCA 1980); and
(b) the appellant, who was merely a passenger in a vehicle involved in the fatal traffic accident, could not be guilty of non-felony murder,
the second degree murder charge cannot stand.[2]
II.
We reject, however, the only claim of error in the grand theft conviction. The appellant contends that his confession, which contains the sole evidence that he stole the car used in the robbery, should have been suppressed. Citing Brown v. Illinois, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975) and Dunaway v. New York, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979) and their numerous descendants, he argues that the confession was fatally tainted by the fact that it was secured while he was incarcerated after an arrest which, the trial court found, was not based on the “probable cause” legally required to support it. We hold otherwise.
As Brown itself makes clear, the mere fact that a person who has been unlawfully arrested confesses while being confined after that arrest does not alone require suppression. Instead, as the court pointed out, the real issue is whether the confession is the product of the initial illegality or of the defendant’s “free will.” This question, in turn,
must be answered on the facts of each case. No single fact is dispositive. The workings of the human mind are too complex, and the possibilities of misconduct too diverse, to permit protection of the Fourth Amendment to turn on such a talismanic test. The Miranda warnings are an important factor, to be sure, in determining whether the confession is obtained by exploitation of an illegal arrest. But they are not the only factor to be considered. The temporal proximity of the arrest and the confession, the presence of intervening circumstances, ... and, particularly, the purpose and flagrancy of the official misconduct are all relevant....
Brown, 422 U.S. at 603-04, 95 S.Ct. at 2261-62 (citations omitted); Wayne R. Lafave, Search & Seizure § 11.4(b)(3d ed.1996).
An analysis of the two primary elements involved in this calculus [3] convinces us that the trial judge correctly ruled that the confession was admissible.
1. Collins was taken into custody after he was found wandering on a public street three-fourths of a mile from where the getaway vehicle had finally crashed, by officers who were trying to find the men who had bailed out of the car. Significantly, Collins had a. gash in his head which he attempted, rather lamely, to explain away by claiming that it had occurred at a fight at a high school a short time before and a short distance away. Even assuming that these circumstances did not give rise to probable cause that the defendant had been involved in the series of crimes now in question, Benefield v. State, 160 So.2d 706 (Fla.1964), the facts at the least were sufficient to support a Terry investigative stop. Popple v. State, 626 So.2d 185 (Fla.1993); State v. Webb, 398 So.2d 820 (Fla.1981). Thus, the case is very far from the egregious circumstances of Brown and Dunaway, in which the defendants were taken into custody simply “for investigation” in the hopes of turning up *823 something against them while they were in jail. Applying Brown, “the purpose and flagrancy of the [assumed] official misconduct,” 422 U.S. at 604, 95 S.Ct. at 2262, were respectively neither nefarious nor pronounced. As Lafave says, in language, directly applicable here,
suppression is less likely where the illegality is an arrest slightly short of probable cause after a lawful stopping for investigation or an arrest on evidence which would be sufficient but for its acquisition during a stopping for investigation on grounds barely insufficient, or when the arresting officers were not contemplating the possibility of post-arrest questioning.
5 Lafave, Search & Seizure § 11.4(b), at 262 (footnotes omitted).
2. The other important factor in the Brown analysis, the “presence of intervening circumstances,” likewise points to affirmance. In this case, after due Miranda warnings, Collins, who had previously refused to do so, confessed upon being told that police had spoken to a co-defendant. As the defendant was not told, but as he apparently surmised, that accomplice had both himself confessed and directly implicated Collins in the robbery and homicide. Because that statement was alone enough to establish probable cause that Collins was guilty of these crimes, see Craig v. Singletary, 127 F.3d 1030 (11th Cir.1997), and it would have thus been perfectly lawful then to arrest and imprison him, his confession took place when he was lawfully in custody. It can make no difference that the officers did not, as the appellant argues they should have, let him go and immediately rearrest him on the probable cause which had by then arisen. State v. Gifford, 558 So.2d 444 (Fla. 4th DCA 1990). Many cases hold that “intervening circumstances” such as these break the causal chain between the unlawful arrest, and the confession. See State v. Stevens, 574 So.2d 197 (Fla. 1st DCA 1991)(intervening circumstances of probable cause, defendant’s voluntary seclusion, and defendant’s being confronted with evidence sufficient to purge taint of illegal arrest), and cases cited; Gifford, 558 So.2d at 444 (probable cause dissipated taint of illegal arrest); People v. Pierson, 166 Ill.App.3d 558, 117 Ill.Dec. 18, 519 N.E.2d 1185 (1988)(probable cause constituted intervening circumstance which attenuated' taint of illegal arrest), cert. denied, 488 U.S. 925, 109 S.Ct. 307, 102 L.Ed.2d 326 (1988); People v. Lekas, 155 Ill.App.3d 391, 414, 108 Ill.Dec. 60, 76, 508 N.E.2d 221, 237 (1987)(when police acquire probable cause after arrest but prior to statement “one could question the wisdom of requiring police to go through the formality of releasing [the defendant], only to rearrest him outside the jailhouse door”), cert. denied, 485 U.S. 942, 108 S.Ct. 1123, 99 L.Ed.2d 283 (1988); 5 Lafave, Search & Seizure § 11.4(b), at 263-66, and cases collected.
Such cases as Gifford approve the admission of a confession because of intervening circumstances, even when the initial pickup was as flagrant and improper as those in Brown and Dunaway. A fortiori, in this case, in which both significant factors support admissibility, it is all the more clear that the trial court’s ruling was correct.
III.
For these reasons, the conviction and sentence for second degree murder are reversed, the conviction of'grand theft is affirmed, and the cause is remanded for re-sentencing on that charge alone.
Affirmed in part, reversed in part, and remanded.

. Among other things, the prosecutor, Spivak, and the defense attorney, Sohn, engaged in a fist fight in the courtroom.

. This holding moots the defendant’s apparently otherwise meritorious point, based on a combination Postell-Bruton violation, that it was improperly implied to the jury that the accomplices’ confessions had implicated Collins.

. As Lafave points out at 258-61, the factor of the “temporal proximity of the arrest and the confession," see Brown, 422 U.S. at 603, 95 S.Ct. at 2261, which was six hours in this case, has proven to be “not ... at all significant.” 5 Lafave, Search & Seizure § 11.4(b), at 259.